Bobby LAWSON and Laura
Lawson, Plaintiffs,

v.

VIRGINIA DEPARTMENT OF WEL-
FARE and Lee County Department
of Social Services, Defendants.

Civ. A. No. 81–0278–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Oct. 15, 1982.

Martin Wegbreit, Client Centered Legal
Services of Southwest Va., Castlewood, Va.,
for plaintiffs.

John A. Rupp, Senior Asst. Atty. Gen.,
Richmond, Va., H. Ronnie Montgomery,
Jonesville, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is presently before the court on
plaintiffs' and defendants' cross motions for
summary judgment pursuant to Rule 56(a)
of the Federal Rules of Civil Procedure.
The subject of this action concerns the
meaning of 7 C.F.R. 273.8(h)(1)(ii)[1] and
whether this federal regulation is correctly
interpreted by Section 603(H)(2)[2] of the
Virginia Food Stamp Certification Manual.
Jurisdiction of this court attaches pursuant

---

1. 7 C.F.R. 273.8(h):

(h) *Handling of licensed vehicles.* The val-
ue of licensed vehicles shall be excluded or
counted as a resource as follows:

(1) The entire value of any licensed vehicle
shall be excluded if the vehicle is:

(i) Used primarily (over 50 percent of the
time the vehicle is used) for income produc-
ing purposes such as, but not limited to, a
taxi, truck, or fishing boat;

(ii) Annually producing income consistent
with its fair market value, even if used only
on a seasonal basis;

(iii) Necessary for long distance travel,
other than daily commuting, that is essential
to the employment of a household member,
for example, the vehicle of a traveling sales
person or of a migrant farmworker following
the work stream; . . . .

2. Virginia Food Stamp Certification Manual
§ 603(H):

H. *Vehicles*

The *entire* value of a licensed vehicle shall be
exempt if the licensed vehicle is:
1. Used primarily (over 50 percent of the
time the vehicle is used) for income produc-
ing purposes; or,
2. Annually producing income consistent
with its fair market value (approximately
10% of fair market value) or consistent with
the prevailing market trends in a particular
area (if earning less than 10% of its fair
market value), even if it is used only on a
seasonal basis; or
3. Necessary for long distance travel, other
than daily commuting, that is essential to the
employment of a household member—for ex-
ample, the vehicle of a traveling sales person
or of a migrant farmworker following the
work stream; or, . . .
Vehicles used only for transporting house-
hold members to and from work do not quali-
fy as income producing vehicles, as a vehicle
must actually be involved in generating in-
come, e.g., a taxi, truck, or fishing boat. The

to 28 U.S.C. §§ 1331, 1337, 1343(a)(3) and (4).[3]

## I.

The facts of this case are basically undisputed. On April 21, 1981, plaintiffs applied for food stamps with the Lee County Department of Social Services. Their application was denied on April 21, 1981 because of a determination that the plaintiffs owned "excess resources." The excess resource referred to was a 1980 Mazda RX7 with a fair market value of $7,000. Since the first $4,500 of value is an exempt resource, the plaintiffs supposedly had $2,500 in resources, which exceeded the allowed resource level of $1,500. On May 11, 1981, the plaintiffs reapplied for food stamps with the Lee County Department of Social Services. Their application was denied on May 11, 1981, again because of "excess resources." On May 12, 1981, plaintiffs requested a Fair Hearing before the Virginia Department of Welfare to contest the denial of food stamps by the Lee County Department of Social Services. A Fair Hearing was held on June 12, 1981 before Ernest L. Bacon, a hearings officer for the Virginia Department of Welfare. Plaintiffs presented evidence at the Fair Hearing that Mrs. Laura Lawson used the 1980 Mazda RX7 in her sales work, selling Mary Kay cosmetics, and that the profits from that sales work from January through May, 1981 totalled $760.54. Plaintiffs contended that the profits of $760.54 equalled 10.9% of the fair market value of the vehicle used to produce those profits, and therefore, was an exempt "income producing" resource under 603(H)(2), Virginia Food Stamp Certification Manual. A Fair Hearing decision was rendered on July 9, 1981 which upheld the decision of the Lee County Department of Social Services and denied plaintiffs' application for food stamps. The hearing officer found that the use of the plaintiffs' automobile did not fit one of the categories for exemption of property under Section 603(H), Virginia Food Stamp Certification Manual.

---

vehicle's exempt status is not affected by temporary periods of unemployment, such as when a taxi driver is ill and cannot work, or when a fishing boat is frozen in and cannot be used.

**3.** 28 U.S.C. § 1331 states:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. As amended Oct. 21, 1976, Pub.L. 94 574, § 2, 90 Stat. 2721; Dec. 1, 1980, Pub.L. 96–486, § 2(a), 94 Stat. 2369.

28 U.S.C. § 1337 states:

(a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: *Provided, however,* That the district courts shall have original jurisdiction of an action brought under section 20(11) of part I of the Interstate Commerce Act (49 U.S.C. 20(11)) or section 219 of part II of such Act (49 U.S.C. 319), only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.

(b) Except when express provision therefor is otherwise made in a statute of the United States, where a plaintiff who files the case under section 20(11) of part I of the Interstate Commerce Act (49 U.S.C. 20(11)) or section 219 of part II of such Act (49 U.S.C. 319), originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of any interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

(c) The district courts shall not have jurisdiction under this section of any matter within the exclusive jurisdiction of the Court of International Trade under chapter 95 of this title.

28 U.S.C. § 1343(a)(3) and (4) states:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \* \*

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

The plaintiffs maintain that the meaning of "producing income" located in Section 603(H)(2) is where a licensed vehicle is used to produce earned income as opposed to a vehicle actually involved in generating income, such as a taxi. The defendants maintain that the vehicle itself must produce income and this interpretation follows federal law and regulations.

## II.

The basic issue to be decided by the court is the meaning of 7 C.F.R. 273.8(h)(1)(ii) and whether this federal regulation is correctly interpreted by Section 603(H)(2) of the Virginia Food Stamp Certification Manual. The Federal Register of May 2, 1978 addressing the proposed rules for exemption of licensed vehicles states the following:

> The law requires that licensed vehicles will be totally exempt if used 'to produce earned income.' To qualify for this exemption, *the vehicle must actually be involved in generating income, e.g., a taxi, tractor, or truck.* Vehicles used only for transporting household members to work will not qualify as income producing vehicles. 43 F.R. 18885 (1978) (emphasis added).

The proposed rules were adopted in final form on October 17, 1978, with the same wording as that which has been proposed. In addition, several other categories of what could be included as "income producing vehicles" were added. However, USDA's prior interpretation of the statutory phrase "used to produce earned income" was still to be applicable. This is evidenced by USDA's Introduction to the Final Rules and Regulations which was published in the Federal Register on October 17, 1978:

> Unless otherwise stated, or unless inconsistent with the final rules or preamble, the rationale contained in the proposal should be regarded as a basis for the pertinent final rules. Thus, a thorough understanding of the grounds for the final rules may require reference to the May 2, 1978 publication. 43 F.R. 18874 (1978).

Further evidence of the intent of the "income producing vehicles" exemption can be found in the legislative history of the Food Stamp Act of 1977:

> It is not the Committee's intention in including the partial market value of some automobiles as assets to make many persons ineligible who are otherwise needy [by] virtue of the income standards of eligibility. But the Committee does not intend either to tolerate abuses of the kind that make the program subject to public criticism. If there is such a thing as a welfare Cadillac, there ought not to be. The Committee bill would treat Cadillacs and Rolls Royces and Bentleys or Mercedes Benzes or excessively expensive sports cars, even if used for a household member's employment because it transports its owner to work, as items leading to, almost conclusively, ineligibility. It is not necessary to drive to work in such cars—if, in fact, it ever occurs, a matter as to which the Committee has received no information whatever, but which the new proposal should bring into the limelight. However rural an area, a household does not have to have a new or sightly [sic] used luxury car to traverse the distances.
>
> Only one type of car could avoid being counted at all—one used to produce earned income during some portion of the year. Thus, a tractor or school bus or delivery van or pick-up would not be included among a household's assets if they were used to add to the household's income, even if the household did not use them for this purpose on a full-time basis, for example, because of freeze conditions in the winter. Nor would a regular car if it were used to provide taxi service.
>
> \*    \*    \*    \*    \*    \*
>
> . . . All cars would be treated alike by being subject to the $4,500 ceiling over which their value would become a countable asset, except for cars used to produce earned income, which would remain exempt regardless of their fair market value. H.R.Rep. No. 464, 95th Cong., 1st Sess. 89 (1977), U.S.Code Cong. & Admin. News 1977, pp. 1707, 2067.

In addition, the Virginia Department of Welfare's Food Stamp Certification Manual, implemented pursuant to 7 C.F.R. § 272.3, must be reviewed and approved by the Food and Nutrition Service of the United States Department of Agriculture. The Manual was submitted to the Food and Nutrition Service and was approved.

Therefore, the court finds that it was the intention of Congress and the federal regulatory agency administering the food stamp program to have 7 C.F.R. § 273.8(h)(1)(ii) exempt only licensed vehicles which themselves generate income, such as a taxi.

Accordingly, the plaintiffs' automobile is not "producing income" under 7 C.F.R. § 273.8(h)(1)(ii) and plaintiffs' motion for summary judgment is denied. Further, that Virginia Food Stamp Certification Manual Section 603(H)(2) is in compliance with federal regulation 7 C.F.R. § 273.-8(h)(1)(ii). Defendants' motion for summary judgment is granted.